IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>EDGAR B. FIELDS, )<br>)<br>Defendant. )<br>_____ ) | Criminal No. 05-357-01 (RMU)<br>UNDER SEAL |

## DEFENDANT EDGAR FIELDS'S
## MEMORANDUM IN AID OF SENTENCING

Mr. Edgar B. Fields, the defendant, through undersigned counsel, respectfully submits this Memorandum in Aid of Sentencing. Based on all of the section 3553(a) sentencing factors as applied to this extraordinary case, the defense respectfully submits that the appropriate sentence in this case is time served (approximately 4 months) plus a term of probation.

When this Court released Mr. Fields to bond on March 13, 2006, it issued him a stern warning about the consequences of his actions. The Court also issued Mr. Fields a challenge. The Court challenged Mr. Fields to change his life in numerous ways, including: (1) to complete the New Directions Program and stay 100% drug free; (2) to search for and obtain employment; and (3) to abide by all of the other conditions of release, including (obviously) no new arrests.

In one of the most inspirational things undersigned counsel has ever personally witnessed, Mr. Fields has stepped up to this Court's challenge in every possible sense. Working with Leontyne Fredericks, the head of the New Directions Program, Mr. Fields graduated from New Directions and has remained completely drug-free for well over a year (his last positive test was November 10, 2005). Mr. Fields has worked consistently in several different jobs, and has endeavored to find employment that will support himself and his family well into the future.

And perhaps most importantly, he has remained a wonderful father to his three children, Enyjaih (4 years old), Jaden (2 years old), and Emani (2 months old), and a wonderful son to his mother, Sheryl Johnson, as she has struggled through heart problems including a serious heart attack she suffered this month, February 2007.

In short, Mr. Fields has done absolutely everything the Court has asked him to–and much more. At the age of 27, he has become the head of the household for two generations, his parents' family and his own. And he is doing remarkably well. To the extent there was any doubt, Mr. Fields has proven that a motivated defendant can use the resources of this Court to turn his life around; that we can indeed "teach old dogs new tricks."[1] Based on Mr. Fields's extraordinary efforts and successes, the defense respectfully submits that the Court should sentence him to time served, plus a period of probation.

## **BACKGROUND**

### A.    **Offense Conduct and Procedural History.**

The government's Sentencing Memorandum and the Presentence Investigation Report ("PSR") contain a summary of the offense conduct, so that will not be repeated here. Following Mr. Fields's arraignment on September 22, 2005, he was released on personal recognizance with conditions. At the very outset of his release, Mr. Fields suffered several positive tests for marijuana use. He was stepped back on December 20, 2005 and spent the next three months

---

[1] In the Receipt and Acknowledgment for the PSR, Mr. Fields write the following to the Court:

> Thanks for giving me a chance to see my baby girl born. She (was) born on Christmas. I did everything you asked me to. I just hope you can find it in your heart to allow me a chance to show you that you can teach old dogs new tricks.

2

incarcerated at D.C. Jail.

On March 13, 2006, the Court held a status hearing and agreed to reconsider Mr. Fields no-bond status. On that day, the Court challenged Mr. Fields to turn his life completely around. The Court agreed to release Mr. Fields, but only so long as: (1) he participated in the New Directions Program and stayed 100% drug-free; (2) he made every effort to obtain employment and remain employed; and (3) he abided by all of the other conditions of release. As noted, Mr. Fields has satisfied the Court's conditions in every possible sense.

**B.     Edgar B. Fields.**

Mr. Fields is 27 years old. He was born on June 14, 1979 in Washington, D.C. to the non-marital union of Sheryl Johnson and Charles Bias. Mr. Fields has resided in Washington for his entire life.

When Mr. Fields was seven years old, his family was met with a horrible tragedy. In May 1987, Mr. Fields' mother, Sheryl Johnson, was trying to establish a better living situation for her family. At that time, the family (Ms. Johnson, 8 year-old Edgar Fields, and his two younger siblings) were staying in a city-run shelter in Northwest, Washington, D.C. A man murdered the security guard at the shelter and proceeded to Ms. Johnson's room at the shelter. See Ex. 1 (Article, "Guard Killed, Woman Raped at NW Shelter; Man Arrested at City Facility for Homeless," The Washington Post, May 19, 1987). After forcing his way into their room with a handgun stolen from the security guard, the assailant forced 8-year old Edgar and his siblings into a back room. He then raped Ms. Johnson in the living room at gunpoint. See id.

Following this horrific incident, Ms. Johnson suffered a mental breakdown and was admitted to St. Elizabeth's Hospital for an extended period. While Mr. Fields and his siblings

received counseling by city social workers, Mr. Fields suffered from psychological distress from the incident and from being separated from his mother at such a traumatic time. Ms. Johnson reports that young Mr. Fields exhibited a number of stress-related conditions in the years following this incident, such as chronic bed-wetting and separation anxiety.

In the years following this incident (1987-1996), Ms. Johnson struggled with mental illness and became addicted to drugs. See, e.g., PSR ¶ 44. In 1996, Ms. Johnson was able to successfully quit drugs and make peace with the past. Since 1996, for eleven years now, Ms. Johnson has remained clean and sober. Upon Mr. Fields's graduation from the New Directions Program in July 2006, Ms. Johnson gave her son her 10-year sobriety pin as congratulations for his successful efforts in staying away from drugs.

* * *

Through his own efforts, and with the assistance of the resources extended to him, Mr. Fields has become a different person since his arrest in this case. The change in his attitude and actions is obvious from many things, but perhaps the best evidence is the testimonials from those closest to him. Shaneeka Richardson, the mother of Mr. Fields's son Jaden (2 years old), stated to the probation officer that there is

> a noted difference in [Mr. Fields's] attitude and approach since he was released from custody in April [actually March 13] 2006. She elaborated that he is taking life more seriously, spending more time than ever with their son, and demonstrating initiative in establishing education/employment.

PSR ¶ 33.

Similarly, Mr. Fields long-time girlfriend and the mother of his two daughters, Shakira Randolph, describes the New Directions Program as "the best thing that ever happened" to Mr.

Fields. Following the Court's stern words and guidance, and with the assistance of the New Directions Program (including the specific assistance of Ms. Fredericks) and Pretrial Services, Mr. Fields has become the man that his family--and society--need him to be.

For example, Mr. Fields, now more than ever, does the following (as noted in the PSR):

**Supports and cares for his children.** The PSR notes that Mr. Fields "daily retrieves [his 4-year old daughter, Enyjaih] from school and either participates in activities with her or takes her to her sister's residence." PSR ¶ 32. Happily, Enyjaih is doing so well at school that she recently won the Martin Luther King, Jr. student award and is on the Honor Roll. Enyjaih has been so successful thus far that she will be skipping ahead to kindergarten a year early. In addition, Shaneeka Richardson, the mother of Mr. Fields's son Jaden (2 years old), describes the defendant "as a very active father who is helpful to her as well when she is in need of assistance in caring for their son, including transportation and child care." Id. The newest addition to the Fields' family, Emani (2 months old), was born on Christmas Day, 2006.

**Cares for his entire family, including his mother, Sheryl Johnson.** Because of his family's history, and Ms. Johnson's serious heart condition, Mr. Fields has had to assume the role of "Man of the House" for the entire family since a very young age. See PSR ¶ 34. Mr. Fields provides tremendous care and love to his mother, particularly the last 3 years as she has struggled through serious health problems, including heart disease. See PSR ¶ 38. Mr. Fields's caretaking for his mother is particularly needed now, as Ms. Johnson suffered her most recent heart attack this month, after which she was hospitalized for several days.

Mr. Fields is, in short, his family's Rock of Gilbraltar. He is the backbone of the family living structure for his parents; his longtime companion Shakira Randolph; and for this three

children, And while he did not truly step up to <u>all</u> of the challenges of this role until recently, near the age of 27, it has nevertheless been an remarkably inspirational thing for undersigned counsel to have witnessed. The strength of the family's connections–the love they show for each other and their dependence on one another–was an impressive thing to begin with. But to see Mr. Fields become the man he has for his family–<u>because of</u> his family–is nothing short of awe-inspiring, particularly given the challenging circumstances of Mr. Fields's early life.

**Is working diligently towards steady employment.** Since being re-admitted to bond in March 2006, Mr. Fields has worked a number of jobs in an effort to find something steady that will sustain him and his family over the long-term. His efforts at obtaining employment are set forth at paragraphs 49-59 of the PSR. Mr. Fields is now in the process of enrolling in Project Empowerment, an employment program offered through Pretrial Services. Undersigned counsel has confirmed his efforts with Mr. Fields's Pretrial Services Officer, Daniel Gillespie.

**B.     Mr. Fields's Lack of Cooperation Under U.S.S.G. § 5K1.1.**

The government's Sentencing Memorandum is singularly focused on Mr. Fields's failure to earn a departure under U.S.S.G. § 5K1.1. Oddly, the government views this as a reason to impose the high end of Mr Fields's Guidelines range, despite all of Mr. Fields other accomplishments in his life since his release from D.C. Jail in March 2006. The facts behind Mr. Fields lack of cooperation are as follows: Mr. Fields reported to undersigned counsel just after his release in March 2006 that he could not bring himself to participate in covert law enforcement activities. He explained that he had been playing with his 4 year old daughter, Enyjaih, the night before. He explained that after thinking about his future and the perils of cooperation for his family, and after discussing the issue with his ill mother, Sheryl Johnson, he

could not put his family through that process and thereby expose them to the potential dangers of participating in covert law enforcement activities.

In response, undersigned counsel informed Mr. Fields that he should focus on the other areas emphasized by the Court at his bond review hearing: remaining drug free, working, and taking care of his family. In hindsight, the better course may have been for undersigned counsel to also have contacted the government and fully explained Mr. Fields's position. Because it was undersigned counsel's view that, in a case of this nature, Mr. Fields would be out on bond in any event, undersigned counsel did not view Mr. Fields's initial agreement to participate in covert law enforcement activities as the *sine qua non* of his bond status. Indeed, when the government subsequently had Mr. Fields arrested on an *ex parte* bench warrant in October 2006, he was immediately re-admitted to bail (without opposition from the government) because of his tremendous progress in all other areas of his life.

### C. Mr. Fields's Spotless Pretrial Release Compliance Since March 2006.

For nearly a year now–since his release from D.C. Jail on March 13, 2006–Mr. Fields has been 100% compliance with his conditions of release. Mr. Fields has not tested positive for drug use since **November 11, 2005.**

### D. The Presentence Report Guidelines Calculation.

The PSR calculates Mr. Fields's Guidelines range as 30-37 months incarceration. It is noted that Court records do not substantiate that Mr. Fields had the assistance of counsel for his 1999 conviction for possession of an unregistered firearm. See PSR ¶ 23. Accordingly, this conviction should not count towards Mr. Fields' criminal history score. See generally Custis v. United States, 511 U.S. 486, 487, 493-96 (1994) (holding that in a sentencing under the Armed

Career Criminal Act of 1984, 18 U.S.C. § 924(e), a defendant may attack convictions obtained in a proceeding in which the accused was not represented by counsel and had not competently and intelligently waived his right to counsel). In the absence of this conviction, Mr. Fields's criminal history category is only II, and his Guidelines rage is 27-33 months.

## DISCUSSION

I.     **THE POST-<u>BOOKER</u> SENTENCING FRAMEWORK.**

    A.     <u>**United States v. Booker** and 18 U.S.C. § 3553(a).</u>

The Court in <u>Booker</u> held that judges are required to "take account of the Guidelines <u>together with</u> other sentencing factors," and to "<u>consider</u>" the guidelines along with all the other required factors. <u>Id.</u> at 259 (emphasis added). But there is no requirement that a sentence be within the guidelines range, and a number of other statutory factors, which are mandatory, must be followed by the court, because section 3553(a) remains in effect and sets forth numerous factors that guide sentencing. <u>Id.</u> at 261.

Thus, court are now required to impose a sentence "<u>sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2)</u>" of 18 U.S.C. § 3553(a). (Emphasis added). These purposes include the necessity for the sentence:

> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>
> (B) to afford adequate deterrence to criminal conduct;
>
> (C) to protect the public from further crimes of the defendant; and
>
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective

manner.

Subsections (A) through (D) of § 3553(a)(2) thus highlight the primary purposes of sentencing. See also § 3551 (defendant "shall be sentenced in accordance with the provisions of this chapter so as to achieve the purposes set forth in subparagraphs (A) through (D) of section 3553(a)(2) . . ."). In determining a sentence consistent with these goals, the court must consider a number of other factors as well--see § 3553(a)(1)-(7)--including "the nature and circumstances of the offense and the history and characteristics of the defendant," the sentencing guidelines and policy statements issued by the Sentencing Commission, and the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." In addition, "no limitation shall be placed on the information concerning the background, character, and conduct of a person convicted of an offense, which a court of the United States may receive and consider for the purpose of imposing an appropriate sentence." 18 U.S.C. § 3661.

### B. United States v. Lorenzo Pickett.

In the recent case United States v. Pickett, -- F.3d --, 2007 WL 445937 (D.C. Cir., February 13, 2007), the D.C. Circuit greatly clarified the proper approach to sentencing post-Booker. The Circuit held that:

> [H]ow is a court to determine how much influence the factor we are concerned with--the advisory-only Guideline range--should have in sentencing a particular defendant? One might answer that the Guideline range should be considered presumptively reasonable. But that would be to confuse the standard this court and several others have adopted for appellate review with the standard to be applied by the sentencing court. <u>A sentencing judge cannot simply presume that a Guidelines sentence is the correct sentence.</u> To do so would be to take a large step in the direction of returning to the pre-<u>Booker</u> regime.

9

Id. at *12 (emphasis added).

## II. THE SECTION 3553(A) FACTORS AS APPLIED TO EDGAR B. FIELDS.

### A. The Nature and Circumstances Of The Offense.

When considering the nature and circumstances of the offense, the Court should consider that the offenses, while serious, involved no violence. Indeed, nothing in Mr. Fields's criminal history indicates any penchant whatsoever for violence. Furthermore, with respect to the drug offense in this case, the Court should consider that Mr. Fields was engaging in this stupid behavior for the reason of earning extra cash to support his family. While not a justification or excuse for his actions, it is revealing of another appropriate sentencing factor, which is Mr. Fields's exceptionally strong commitment to his family.

### B. The History and Characteristics Of Mr. Fields.

It is the history and characteristics of Edgar B. Fields, and the remarkable change in his priorities and lifestyle over the last year and a half, that remove this case from the heartland of cases and warrant a probationary sentence. The Court should consider the overwhelming evidence in the record establishing that the most important thing to Mr. Fields is his family. See PSR ¶¶ 31-34. This is not rhetoric; Mr. Fields has proved his commitment to his children and by playing a very large role in their lives on an everyday basis. The strength of his love and commitment to his mother, who is now very ill, is undeniable. Mr. Fields is painfully aware that his criminal behavior has put his ability to continue to be there for his family at risk.

As noted by his mother, Mr. Fields has since a young age been the "Man of the House" for his family. While he may not have fully assumed this role until recently, fully assumed it he

has. Courts have always recognized the importance of a defendant to his family structure as an appropriate sentencing factor.[2] See, e.g., United States v. Dyce, 91 F.3d 1462, 1466 (D.C. Cir. 1996) (holding that although family ties and responsibilities of defendant are generally inappropriate considerations, they may provide appropriate grounds for sentencing departures when family circumstances are "extraordinary"). As explained in Dyce, extraordinary family circumstances are present where an individual who is the primary source of income and or care might be removed from the household for a period of time, due to incarceration, thereby causing family hardship. See Dyce, 91 F.2d at 1467 (citing United States v. Gaskill, 991 F.2d 82 (3d Cir. 1993) (defendant was the sole provider for his wife, who had been manic-depressive for 30 years and was unable to leave the house or take care of herself)). Here, Mr. Fields is clearly the backbone of his family living structure, a very appropriate consideration for this Court in determining the appropriate sentence in this case. See United States v. Alba, 933 F.2d 1117 (2d Cir. 1991) (affirming departure and noting the special situation of defendant's close-knit family whose stability depended on the defendant's continued presence); see also United States v. Galante, 111 F.3d 1029,1036 (2d Cir. 1997) (noting that the economic condition and security of a defendant's family are proper considerations in sentencing).

Finally, and relatedly, the Court should consider Mr. Fields's flawless record of pretrial compliance in this past year of pretrial release. Given this record, defense counsel respectfully submits that Mr. Fields does not need to be incarcerated for the protection of the public.

---

[2] Under the plea agreement in this case, defendant is restricted from moving for a "departure" under the Sentencing Guidelines. Defendant does not request such a departure here, but cites these pre-Booker cases for the more general principle that a defendant's family circumstances may of course be a highly relevant sentencing consideration.

### C.    The Advisory Guidelines.

As discussed earlier, the Guidelines range is 27-33 months, as court records do not substantiate that Mr. Fields had the assistance of counsel for his 1999 conviction for possession of an unregistered firearm. See PSR ¶ 23. Accordingly, this conviction should not count towards Mr. Fields' criminal history score. In the absence of this conviction, Mr. Fields criminal hisotry category is II, and his Guidelines range should be 27-33 months.

### III.    UNDER THE POST-BOOKER SENTENCING METHODOLOGY, THE APPROPRIATE SENTENCE IN THIS CASE IS PROBATION.

Consistent with 18 U.S.C. § 3553(a)(1) and Booker, the Court should sentence Mr. Fields to a sentence that comports with the three main categories of sentencing factors: the nature of the offense, the history and characteristics of the of the defendant, and the needs of the public, which also includes consideration of the Guidelines. Based upon those factors and the information concerning Mr. Fields discussed above, the defense respectfully submits that the appropriate sentence in this case is one of time served, plus probation with whatever additional conditions the Court deems appropriate.

## CONCLUSION

WHEREFORE, the aforementioned background information concerning Edgar B. Fields is submitted for this Court's consideration and to encourage the Court to sentence Mr. Fields to a sentence of time served, plus probation with whatever additional conditions deemed appropriate.

Respectfully submitted,

A.J. Kramer
Federal Public Defender

_____
Jonathan S. Jeffress
<u>Counsel for Edgar B. Fields</u>
Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Washington, D.C. 20004
(202) 208-7500 ex.134